**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

SHAWN FLOWERS-BEY,               )
                                 )
             Plaintiff,          )
                                 )
        v.                       )          No. 2:20-CV-4 RLW
                                 )
TOMAS CABRERA, et al,            )
                                 )
             Defendants.         )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Tomas Cabrera, Miguel Paniagua, Karen Rhodes, Mary Chandler, Bonnie Brennen, Tamara Anderson, and Tamra Crouch's Motion for Summary Judgment.[1] (ECF No. 67). Plaintiff Shawn Flowers-Bey opposes the motion, which is fully briefed and ripe for review. For the reasons that follow, the Court grants the defendants' motion for summary judgment.[2]

### I. Background

Plaintiff Shawn Flowers-Bey, who is proceeding pro se, filed this civil rights action on January 27, 2020, pursuant to 42 U.S.C. § 1983 seeking relief for alleged deliberate indifference to his serious medical needs while he was incarcerated at Northeast Correctional Center ("NCC").

---

[1] These are the only remaining defendants in the case. All other defendants were dismissed either on the Court's initial review, pursuant to 28 U.S.C. § 1915(e), or for failure to obtain service. (ECF Nos. 8 and 32)

[2] Also before the Court is Plaintiff's "Motion in Response and in Opposition to Defendants' Motion for Summary Judgement." (ECF No. 70). The relief Plaintiff requests in his "Motion" is that the Court deny Defendants' Motion for Summary Judgment. The Court will deny Plaintiff's motion, but it will consider the arguments Plaintiff makes in his filing and construes it as part of Plaintiff's response in opposition to Defendants' Motion for Summary Judgment.

(ECF No. 1). Plaintiff claims that he has suffered from a left inguinal hernia since June or July of 2016. He alleges medical staff at NCC refused to provide him with medically necessary corrective surgery and instead they provided him with a hernia truss to alleviate his symptoms. (Id.) He claims the truss is inadequate, and any type of physical movement causes him pain. (Id.) Plaintiff alleges that if he were not incarcerated, the standard of care would require surgical intervention. (Id.)

On July 20, 2020, the Court conducted a frivolity review pursuant to 28 U.S.C. § 1915(e)(2). Liberally construing the allegations in Plaintiff's Complaint, the Court found Plaintiff stated a plausible claim for deliberate indifference to a serious medical need in violation of his Eighth Amendment rights against the following defendants in their individual capacities: Tomas Cabrera, Miguel Paniagua, Karen Rhodes, Mary Chandler, Bonnie Brennen, Tamara Anderson, and Tamra Crouch, Unknown McCollum, and Unknown Kim.[3] The Court later dismissed without prejudice defendants Unknown McCollum and Unknown Kim for lack of information to effectuate service.

Following discovery, Defendants Cabrera, Paniagua, Rhodes, Chandler, Brennen, Anderson, and Crouch now move for summary judgment. Defendants argue that Plaintiff cannot establish they acted with deliberate indifference to his serious medical needs, because Plaintiff was provided with appropriate and timely care, and he was referred to an outside specialist for treatment and eventually surgery. Plaintiff opposes Defendants' motion and filed an opposition, to which Defendants filed a reply.

---

[3]On September 11, 2020, the Court ordered the Clerk of Court to correct the spelling of several defendants' names in the record and change the short caption of the case because the first-named defendant was dismissed from the action. (ECF No. 17).

## II.  Summary Judgment Standard

The standard applicable to summary judgment motions is well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114

3

(8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### III.  Undisputed Facts

In support of their motion for summary judgment, Defendants submitted a Statement of Uncontroverted Material Facts ("SUMF").   In opposing Defendants' Motion for Summary Judgment, Plaintiff did not comply with the requirements of Local Rule 4.01(E) in that he did not specifically respond to Defendants' SUMF or provide the Court with a statement of material facts to which he contends a genuine dispute exists. [4]  Instead, Plaintiff filed a declaration, signed by him under penalty of perjury pursuant to 28 U.S.C. § 1746, with a list of 31 "facts."  (ECF No. 71).  Plaintiff does not provide citations to the record in his declaration.

The Rule 56 of the Federal Rules of Civil Procedure requires a nonmovant to dispute facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[4]Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Defendants characterize Plaintiff's declaration as a "self-serving statement," and they argue it is "objectionable" under Fed. R. Civ. P. 56(c)(2) and (4). (ECF No. 71 at 2, 4). Defendants argue that Plaintiff failed to present <u>any</u> evidence to dispute their SUMF and, therefore, the Court should deem all of the facts contained therein as admitted and undisputed for purposes of summary judgment.

Defendants are correct that once a movant has discharged his or her burden under Fed. R. Civ. P. 56, the burden shifts to the non-moving party, here Plaintiff, who must set forth admissible evidence showing there is a genuine dispute of material facts. Fed. R. Civ. P. 56(c); <u>Herring</u>, 207 F.3d at 1029. But under Rule 56 and applicable law, a party's own affidavit or declaration <u>is</u> evidence for purposes of summary judgment. <u>Argenyi v. Creighton Univ.</u>, 703 F.3d 441, 446 (8th Cir. 2013). Moreover, the fact that a party's affidavit or declaration is "self-serving" or favorable to the party's claim "does not render it incompetent." <u>Id.</u> (citing <u>C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford</u>, 453 F. App'x 439, 443 (5th Cir. 2011)). A properly executed affidavit or declaration based on personal knowledge that sets out facts that would be admissible in evidence must be considered for purposes of summary judgment. <u>Id.</u>, <u>see</u> <u>also</u> Fed. R. Civ. P. 56(c)(4). Here, the Court will afford Plaintiff, who is proceeding without the assistance of counsel, some leniency in complying with the Local Rules. The Court will consider Plaintiff's declaration in determining which facts are undisputed and deems the facts in Defendants' SUMF as admitted for purposes of summary judgment to the extent Plaintiff failed to address them in his declaration.

After reviewing the record, and with the summary judgment standard in mind, the Court accepts the following facts as true for purposes of resolving Defendants' Motion for Summary Judgment:

At all times relevant to his Complaint, Plaintiff was incarcerated at NCC. Defendants Cabrera, Paniagua, and Rhodes were employed by Corizon, LLC, as site physicians and provided medical services to inmates at NCC. Defendants Brennen, Chandler, and Crouch were employed by Corizon, LLC, as licensed nurse practitioners and provided medical services to inmates at NCC. Defendant Anderson was employed by Corizon, LLC, as a registered nurse and Health Services Administrator.

On August 18, 2016, Plaintiff put in a Medical Service Request relating to his hernia. Defendant Cabrera saw Plaintiff for his hernia-related complaints on August 31, 2016. At his assessment, Defendant Cabrera noted that Plaintiff had an asymptomatic, small, easily reducible left inguinal hernia. Defendant Cabrera also noted that there was no surgical indication at that time. This was the only encounter Defendant Cabrera had with Plaintiff in 2016 for hernia-related complaints.

In his Declaration, Plaintiff states that in general Defendant Cabrera was "well aware" of his hernia and the pain and discomfort he was experiencing based on in-person visits. Plaintiff declares that Defendant Cabrera told him that he did not need surgery as long as the hernia was reducible, regardless of the pain and discomfort it caused or the limitations it placed on Plaintiff. (ECF No. 71 at 2).

Defendants maintain that Drs. Paniagua and Rhodes did not see Plaintiff for any hernia-related complaints. Plaintiff, however, states in his declaration that Defendant Paniagua told him "on several different appointments," that he would not get surgery unless his hernia was incarcerated.[5] Plaintiff also states in his declaration that Defendant Paniagua encouraged him to

---

[5]An incarcerated hernia is where the contents of the hernia become trapped in the abdominal wall and cannot be pushed back in. See Inguinal Hernia, Mayo Clinic,

wear his hernia truss, despite Plaintiff informing him that the truss caused him pain and discomfort. According to Plaintiff, Defendant Paniagua told him, "You can take a little pain.  You're a tough guy." (ECF No. 71 at 2).  With regard to Defendant Rhodes, Plaintiff states in his declaration that she was aware of his hernia and the pain and discomfort he was experiencing through in-person visits, conversations, and the H.S.R. system.  "She told me on several occasions she was not going to put in a referral for my hernia regardless of my complaints of pain and discomfort.  I started refusing appointments with Ms. [sic] Rhodes due to me being under the impression that she was trying to get me put in the (hole) ag-seg . . ." (ECF No. 71 at 2-3).

On February 24, 2017, Plaintiff put in a Medical Service Request for hernia-related complaints and was seen by Defendant Brennen on February 27, 2017.  Plaintiff had a suprapubic hernia that stuck out.  Plaintiff wanted his lay-ins renewed and requested a hernia belt.  Defendant Brennen performed an assessment and noted that Plaintiff had a suprapubic hernia that was small and reducible.  She also noted that Plaintiff was able to walk without assistance, complete activities of daily living, bear weight within normal limits, and was working on captain's crew.  She diagnosed Plaintiff with a reducible hernia and prescribed him a hernia belt.

Plaintiff was again seen by Defendant Brennen on August 16, 2017.  Plaintiff complained of a worsening left inguinal hernia that was protruding and causing pain before bowel movements. Defendant Brennen noted that Plaintiff's hernia was the size of an avocado, mildly tender, and could not be fully reduced.  She prescribed Meloxicam, ordered a urine analysis, and placed a referral for hernia surgery.

---

https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/syc-20351547 (last visited Dec. 13, 2022).

Defendant Brennen once again met with Plaintiff on August 24, 2017.  She explained that the Utilization Management Medical Director ("UMMD") did not approve surgery but had ordered an alternative treatment plan that included a hernia truss.  Defendant Brennen noted in the medical records that Plaintiff already had a hernia truss, which he did not use.  She encouraged Plaintiff to return in six months for reevaluation.  Plaintiff states in his declaration that Defendant Brennen called him a complainer and told him that he was a "big baby."  (ECF No. 71 at 3).

On January 2, 2018, Plaintiff put in a Medical Service Request for complaints of foot fungus and a plantar wart.  He was seen by Defendant Chandler on January 9, 2018.  Defendant Chandler performed a medical assessment and noted that Plaintiff had a left inguinal hernia the size of an avocado that was reducible and tender upon palpation.  Defendant Chandler instructed Plaintiff to continue wearing his hernia belt, provided education as to what constitutes a hernia emergency, and reviewed his lay-ins.  Plaintiff also received treatment for his foot fungus and plantar wart.  Defendant Chandler only saw Plaintiff for hernia-related complaints on January 9, 2018.  Plaintiff states in his declaration that Defendant Chandler was aware of the pain and discomfort he was experiencing, and on several occasions, she told Plaintiff that she was not going to put in a surgical referral because "the only way they would do surgery was if the hernia was incarcerated regardless of the pain [he] was expressing."  (ECF No. 71 at 3).

Plaintiff put in a Medical Service Request on September 10, 2019 for complaints related to a hernia.  Defendant Crouch saw Plaintiff on September 11, 2019, at which time Plaintiff reported having a left inguinal hernia for approximately six years.  Plaintiff requested surgery.  Defendant Crouch conducted an assessment and noted a small left bulge consistent with an inguinal hernia that was reducible and non-tender.  Defendant Crouch diagnosed Plaintiff with a left inguinal

hernia and instructed Plaintiff to wear his truss and not to engage in strenuous activities or lifting weights.  Plaintiff responded that he did not like wearing the truss because it caused back pain.

On October 7, 2019, Plaintiff put in a Medical Service Request for complaints related to his hernia.  Defendant Crouch saw Plaintiff on October 8, 2019, at which time Plaintiff stated that he had a left inguinal hernia for over three years and wanted to have it fixed.  Plaintiff reported that he was unable to sleep at night due to discomfort.  Defendant Crouch performed an assessment and noted no change in the size of the left inguinal hernia since her last exam.  Defendant Crouch diagnosed Plaintiff with a left inguinal hernia and instructed him to monitor the hernia and follow up with medical as needed.  Defendant Crouch only saw Plaintiff two times for hernia-related complaints.  Plaintiff states in his declaration that Defendant Crouch told him at "several visits" that she was not going to put in a surgical referral "because they are going to deny it, they are not going to do surgery unless [the] hernia was incarcerated."  (ECF No. 71 at 3).

On May 12, 2020, Plaintiff saw Nurse Practitioner Christine Herrington for complaints of worsening lumbar pain with radiation down to his right buttock and hamstring, which he rated at 5/10 pain.  Plaintiff also reported that the hernia pain was increasing, and he rated it 5/10.  Nurse Practitioner Herrington performed an assessment and noted that Plaintiff was able to ambulate without difficulty and get on the exam table slowly, but that he had a hernia that was not reducible and tender to palpation.  Nurse Practitioner Herrington prescribed Indomethacin, Prednisone, and Tizanidine, referred Plaintiff for a hernia belt, gave Plaintiff exercises for sciatica, and continued Plaintiff's lay-ins.  The UMMD denied Nurse Practitioner Herrington's referral for a hernia belt but approved Plaintiff for a surgery consult.

On June 4, 2020, Plaintiff had a telemedicine appointment with a surgeon, Dr. Carl Doerhoff.  Dr. Doerhoff noted that there was a bulge in Plaintiff's left groin.  Dr. Doerhoff

discussed repair options with Plaintiff, and the two agreed that Plaintiff would receive an open mesh repair of his left inguinal hernia.

On July 20, 2020, Plaintiff underwent open mesh repair of his left inguinal hernia. Following surgery, Dr. Doerhoff prescribed analgesic balm, discontinued Robaxin, ordered Tizandine, and prescribed lumbar exercises.  On July 21, 2020, Plaintiff was seen post operation by Dr. Robert Wudel and was released from short stay observation back to his housing unit. He had no complaints following his surgery.

In her role as Health Services Administrator, Defendant Anderson never saw Plaintiff for any medical concerns.  Plaintiff states in his declaration that Defendant Anderson was well aware of his hernia due to her personal dealings with his medical issues.  Plaintiff provided neither dates nor descriptions of these personal dealings.  He also states, without support or citations to other evidence in the record, that Defendant Anderson was the person who coordinated with doctors and hospitals for delivery of service, "but [she] refused." (EFC No. 71 at 3).

In support of summary judgment, Defendants submitted the expert report of Grady J. Bazzel, M.D.  According to Dr. Bazzel, there was a time when the mere presence of a groin hernia was sufficient indication for surgical repair.  In contemporary practice, however, patients are triaged to surgery versus "watchful waiting" according to the severity of symptoms, the patient's sex, and the type of hernia.  (ECF No. 69, Ex. C at 4).  Current treatment guidelines for the management of males with asymptomatic or minimally symptomatic inguinal hernias state that watchful waiting is appropriate.  (Id.)  "It is important to note that these hernias can be reducible or chronically incarcerated."  (Id.)  According to the doctor, physical activity restrictions, while still commonly given, have been shown to have little impact on the natural progression of the hernia.  Patients who are undergoing watchful waiting should seek prompt surgical evaluation if

10

they experience new-onset pain or discomfort with certain physical activities or if their hernia "becomes acutely incarcerated (for those whose hernias were reducible)." (Id.)  Dr. Bazzel wrote the following in his report:

> Historically, inguinal hernias were repaired once detected, under the assumption that complications from unrepaired hernias were common and could increase operative morbidity.  However, a number of randomized trials have compared watchful waiting with surgical repair of inguinal hernias and demonstrated that delaying surgical repair in asymptomatic patients was safe, as acute complications rarely occurred (1.8 emergency operations/1000 patient-years) and the pain scores experienced at one or two years with watchful waiting were not worse than those achieved with surgical repair.  However, for 38 percent of patients at three years and about 70 percent of patients at 7 to 10 years, surgical repair was required eventually because symptoms (usually pain) gradually increased over time.  The surgical outcomes of delayed repairs were not compromised compared with upfront surgery.

(Id.)  Based on these guidelines, the expert opined that Plaintiff was treated appropriately for his inguinal hernia.  (Id.)  "Once it was noted that [Plaintiff's] hernia was increasing in size, producing more symptoms and was not [sic] longer reducible, he was referred to a general surgeon who repaired the hernia with no complications."  (Id.)

## IV.  Discussion

Deliberate indifference to the serious medical needs of prisoners constitutes an "unnecessary and wanton infliction of pain" that is proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  Delaying access to medical care or intentionally interfering with prescribed treatment can constitute deliberate indifference.  Id. at 104–05.  A medical need is serious "if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Ryan v. Armstrong, 850 F.3d 419, 435 (8th Cir. 2017) (internal quotation marks and citation omitted). It is a violation of the Eighth Amendment to deny medical care for serious

medical needs when the denial results in pain and suffering that serves no penological purpose. Estelle, 429 U.S. at 103.

To prevail on an Eighth Amendment claim, a plaintiff must establish two elements: "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the plaintiff must prove that the defendant acted subjectively with deliberate indifference to his serious medical needs. Id.; see Estelle, 429 U.S. at 106. A prison official exhibits deliberate indifference when the official actually "knows of and disregards" a prisoner's serious medical needs. Farmer, 511 U.S. at 837; Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). In fact, medical malpractice or a breach in the standard of care does not amount to a constitutional violation. United States v. Hay, 122 F.3d 1233, 1239 (9th Cir. 1997). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. … Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (internal citations and quotations omitted).

In this case, it is undisputed that Plaintiff eventually underwent successful surgery to repair his hernia. Plaintiff's claim, therefore, is based on the delay of treatment for his hernia, not the denial of treatment. When a deliberate indifference claim is based the delay of treatment, the

plaintiff must offer verifying medical evidence showing the detrimental effect of delay.  Jackson
v. Riebold, 815 F.3d 1114, 1119–20 (8th Cir. 2016).  It is not enough for a plaintiff to rest on his
or her own testimony or declaration.  "Without corroborating evidence of symptoms, however,
self-reported assertions of pain are insufficient to survive summary judgment." Hancock v. Arnott,
39 F.4th 482, 487 (8th Cir. 2022) (citing Holden v. Hirner, 663 F.3d 336, 342–43 (8th Cir. 2011).

In their Motion for Summary Judgment, the remaining defendants in this case argue that
they did not violate Plaintiff's constitutional rights in that they were not deliberately indifferent to
Plaintiff's serious medical needs.  Liability under § 1983 requires a causal link to, and direct
responsibility for, the alleged deprivation of rights.  Madewell v. Roberts, 909 F.2d 1203, 1208
(8th Cir. 1990).  Because liability for damages under § 1983 is personal, "each defendant's conduct
must be independently assessed.  Section 1983 does not sanction tort by association." Smith v.
City of Minneapolis, 754 F.3d 541, 547–48 (8th Cir. 2014) (citing Heartland Acad. Cmty. Church
v. Waddle, 595 F.3d 798, 805–06 (8th Cir. 2010) (citation and internal quotation marks omitted));
see also S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015).  The Court, therefore, turns to the
conduct of each of the remaining defendants in this case to determine whether they are entitled to
judgment as a matter of law.

A.     Tomas Cabrera

Plaintiff claims that Defendant Cabrera was deliberately indifferent to his serious medical
needs involving his left inguinal hernia.  Defendant Cabrera saw Plaintiff one time, on August 31,
2016, for his hernia-related complaints.  There is undisputed evidence in the record that at the visit
Defendant Cabrera performed an assessment and noted that Plaintiff had an asymptomatic, small,
easily reducible, left inguinal hernia.  Defendant Cabrera noted that there was no surgical
indication at that time.  Plaintiff states in his declaration that Defendant Cabrera knew of his hernia

13

and the pain and discomfort he was experiencing.  Plaintiff also states in his declaration that Defendant Cabrera told Plaintiff that he did not need surgery as long as his hernia was reducible, regardless of the pain and discomfort it caused or the limitations it placed on Plaintiff.  (ECF No. 71 at 2).

Even construing the evidence in a light most favorable to him, Plaintiff has not established that Defendant Cabrera disregarded a serious medical condition.  It is undisputed that when Defendant Cabrera saw Plaintiff in August 2016, Plaintiff had a small, reducible hernia.  The expert in this case opined that the care Plaintiff received for his hernia, including waiting for surgical intervention, was appropriate under current medical standards, and Plaintiff has offered no medical evidence or expert testimony to rebut this conclusion.  Plaintiff has presented no evidence of other encounters with Defendant Cabrera, and statements in his own declaration that Defendant Cabrera generally knew of Plaintiff's pain and discomfort are insufficient to establish a claim for deliberate indifference to a serious medical need.  Hancock, 39 F.4th at 487; Holden, 663 F.3d at 342–43. The Court finds Defendant Cabrera is entitled to judgment as a matter of law.

**B.    Miguel Paniagua**

Plaintiff alleges that Defendant Paniagua was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  According to Defendants' SUMF, Defendant Paniagua never saw Plaintiff for any hernia related complaints.  Defendants cite to an absence of evidence in Plaintiff's medical records to support this fact.  Plaintiff asserts in his declaration that Defendant Paniagua told Plaintiff "on several different appointments" that Plaintiff would not get surgery unless his hernia was incarcerated.  (ECF No. 71 at 2).  Plaintiff also states that Defendant Paniagua encouraged Plaintiff to wear the hernia truss, despite the fact that Plaintiff told the doctor that it

caused him pain and discomfort.  According to Plaintiff, Defendant Paniagua replied, "You can take a little pain.  You're a tough guy."  (ECF No. 71 at 2).

Plaintiff's assertions regarding Defendant Paniagua and the treatment he did or did not provide are found in Plaintiff's declaration, and Plaintiff does not cite to the medical records or provide additional details about his appointments with Defendant Paniagua.  Defendants attached approximately 1600 pages of Plaintiff's medical records to their SUMF, and Plaintiff does not point to anywhere in the record to show that he was seen by Defendant Paniagua for his hernia.

But even if the Court were to find that Plaintiff has rebutted the defendants' facts, and the Court were to find there is evidence Plaintiff was seen by Defendant Paniagua for his hernia, Plaintiff has not shown there is evidence that Defendant Paniagua was deliberately indifferent to his medical needs.  Plaintiff has presented no evidence as when these appointments were and what his symptoms were at the time he was seen.  There is no information as to how big his hernia was or whether the hernia was incarcerated when he was seen by Defendant Paniagua.  More importantly, Plaintiff has presented no medical evidence or expert testimony as to what treatment Defendant Paniagua should have provided but did not.  Plaintiff's evidence that Defendant Paniagua was aware that Plaintiff was experiencing pain from his hernia amounts to "self-reported assertions of pain," which without more, are insufficient to survive summary judgment.  Hancock, 39 F.4th at 487.  See also Buckley v. Corr. Med. Servs., Inc., 125 F. App'x 98, 99 (8th Cir. 2005) ("although [plaintiff] testified that he experienced some pain, he did not counter the testimony of two [jail] physicians that the surgery was elective and not a medical emergency, and he admitted that no one had told him the delay was detrimental").  In sum, Plaintiff has not met his burden of producing "sufficient probative evidence" that would permit a finder of fact to find Defendant

Paniagua was deliberately indifferent to Plaintiff's medical needs.  Davidson & Associates, 422 F.3d at 638.  Defendant Paniagua is entitled to summary judgment as a matter of law.

### C.    Karen Rhodes

Plaintiff alleges that Defendant Rhodes was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  Again, according to Defendants' SUMF, Defendant Rhodes never saw Plaintiff for any hernia related complaints.  Plaintiff does not dispute this fact with citations to the record, instead he states in his declaration that Defendant Rhodes was "aware of my hernia, the pain and discomfort I was experiencing by in person visits, conversations, and through the H.S.R. system."  (ECF No. 71 at 2).  Plaintiff further states, "[Dr.] Rhodes stopped all of my pain medications due to me not wanting to take a medication that she prescribed ….  She has told me on several occasions she was not going to put in a referral for my hernia regardless of my complaints of pain and discomfort."  (Id. at 2-3).

As with Defendant Paniagua, even if the Court were to find that Plaintiff has rebutted the fact that Defendant Rhodes never saw Plaintiff for his hernia, Plaintiff has not shown there is evidence she was deliberately indifferent to his medical needs.  Plaintiff does not state when these appointments were, what his symptoms were, or how big his hernia was when he saw Defendant Rhodes.  General statements that Defendant Rhodes was aware of his pain and discomfort are not enough to establish deliberate indifference to a serious medical need.  Hancock, 39 F.4th at 487; Buckley, 125 F. App'x at 99.[6]  Defendant Rhodes is entitled to the entry of summary judgment.

---

[6]With regard to Plaintiff's statement regarding his pain medications, there is no evidence in the record that Plaintiff was prescribed pain medications for his hernia.  Plaintiff did file a grievance against Dr. Rhodes, which was, in part, regarding the pain medications she was or was not prescribing.  (ECF No. 69, Ex. B at 8, 11).  These pain medications, however, were not being prescribed for Plaintiff's hernia, but for issues he was having with chronic back pain.  (Id.)  Plaintiff filed a separate lawsuit with regard to the medical treatment he received for his back, Flowers-Bey v. Anderson, No. 2:19-CV-00070-SRC, 2021 WL 4243169, at *1 (E.D. Mo. Sept. 17, 2021), which

D.      **Bonnie Brennen**

Plaintiff alleges that Defendant Brennen was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  According to Defendants' SUMF, Defendant Brennen saw Plaintiff on two occasions for hernia-related complaints in 2017.  On February 27, 2017, Defendant Brennen diagnosed Plaintiff with a reducible hernia and prescribed him a hernia belt.  Later, in August 2017, Defendant Brennen noted Plaintiff's hernia was the size of an avocado, was mildly tender, and could not be fully reduced.  She prescribed Meloxicam, ordered a urine analysis, and placed a referral for a surgical consult.  The UMMD, however, did not approve the hernia surgery, and instead ordered an alternative treatment plan that included a hernia truss, which Plaintiff already had but did not use.  Plaintiff does not dispute these facts, although he asserts in his declaration that Defendant Brennen informed him that she would not put in a surgical referral for his hernia.  This statement is not supported by the record, as it is undisputed that Defendant Brennen did in fact put in a surgical referral for Plaintiff's hernia, but the referral was denied.

Plaintiff has not presented evidence that Defendant Brennen was deliberately indifferent to his serious medical need.  The expert in this case opined that the medical care Plaintiff received for his hernia was appropriate.  When Plaintiff presented with hernia related complaints, Defendant Brennen performed an assessment and developed a treatment plan for his symptoms, including the use of a truss and later a referral for surgery.  Plaintiff has presented no evidence demonstrating that Defendant Brennen knew of an excessive risk to Plaintiff's health and that she unreasonably failed to act upon that knowledge.  Dulany v. Carnahan, 132 F.3d 1234, 1239–40 (8th Cir. 1997).

---

was dismissed on summary judgment.  In any event, a disagreement as to the appropriateness of a medication or treatment does not rise to the level of actionable deliberate indifference.  Popoalii, 512 F.3d at 499.  Plaintiff has presented no medical evidence or expert testimony that he should have been prescribed pain medication for his hernia but was not.

There is no evidence that Defendant Brennen was deliberately indifferent to Plaintiff's medical needs, and Defendant Brennen is entitled to summary judgment as a matter of law.

### E.    Mary Chandler

Plaintiff alleges that Defendant Chandler was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  Defendant Chandler saw Plaintiff on one occasion for hernia-related complaints.  On January 9, 2018, Defendant Chandler noted that Plaintiff had a left inguinal hernia the size of an avocado that was reducible and tender upon palpation.  She instructed Plaintiff to continue wearing his hernia belt, provided education as to what constitutes a hernia emergency, and renewed Plaintiff's lay-ins.  Plaintiff asserts in his declaration that Defendant Chandler was aware of his hernia and the pain and discomfort he was experiencing.  He asserts that she said she was not going to put in a surgical referral, and the only way surgery would be done was if the hernia was incarcerated, regardless of pain.

Even construing the evidence in a light most favorable to Plaintiff, he has not established Defendant Chandler disregarded a serious medical condition.  It is undisputed that when Defendant Chandler saw Plaintiff in January 2018, Plaintiff had a hernia that was "tender" but reducible.  The expert in this case opined that the care Plaintiff received for his hernia, including waiting for surgical intervention, was appropriate under current medical standards, and Plaintiff has offered no medical evidence or expert testimony to rebut this conclusion.  Plaintiff has presented no evidence about other encounters Plaintiff had with Defendant Chandler, and general statements that Defendant Chandler knew of Plaintiff's pain and discomfort are insufficient to establish a claim for deliberate indifference to a serious medical need.  Hancock, 39 F.4th at 487; Holden, 663 F.3d at 342–43.  There is no evidence that Defendant Chandler was deliberately indifferent to Plaintiff's medical needs, and she is entitled to summary judgment.  Dulany, 132 F.3d at 1239–40.

F.      **Tamara Crouch**

Plaintiff alleges that Defendant Crouch was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  According to Defendants' SUMF, Defendant Crouch saw Plaintiff on two occasions for hernia-related complaints.   On September 11, 2019, Defendant Crouch conducted an assessment and noted a small left bulge consistent with an inguinal hernia that was reducible and non-tender.  She instructed Plaintiff to wear his hernia truss and not to engage in strenuous activities or lift weights.  Defendant Crouch performed another assessment on October 8, 2019, and noted no change in the size of the left inguinal hernia since Plaintiff's last visit.  She instructed Plaintiff to monitor his hernia and to follow up with medical as needed.

Even construing the evidence in a light most favorable to Plaintiff, he has not established that Defendant Crouch disregarded a serious medical condition.  It is undisputed that when Defendant Crouch saw Plaintiff in the fall of 2019, Plaintiff had a hernia that was reducible.  The expert in this case opined that the medical treatment Plaintiff received for his hernia, including waiting for surgical intervention, was appropriate under current medical standards, and Plaintiff has offered no medical evidence or expert testimony to rebut this conclusion.  Plaintiff has presented no evidence about other encounters Plaintiff had with Defendant Crouch, and general statements that Defendant Crouch knew of Plaintiff's pain and discomfort are insufficient to establish a claim for deliberate indifference to a serious medical need.  Hancock, 39 F.4th at 487; Holden, 663 F.3d at 342–43.  There is no evidence that Defendant Crouch was deliberately indifferent to Plaintiff's medical needs, and Defendant Crouch is entitled to summary judgment. Dulany, 132 F.3d at 1239–40.

G.      Tamara Anderson

Plaintiff alleges that Defendant Anderson was deliberately indifferent to his serious medical needs involving a left inguinal hernia.  According to Defendants' SUMF, Defendant Anderson never saw Plaintiff for any hernia related complaints.  In his declaration, Plaintiff states Defendant Anderson was aware of his hernia "due to her dealing with my issues personally . . ." (ECF No. 71 at 3).  Plaintiff further states that Defendant Anderson was the person who coordinated with doctors and hospitals for delivery of services, and she "could have stepped in with her knowledge as a registered nurse, but she refused."  (Id. at 3-4).

It is undisputed that Defendant Anderson did not personally treat Plaintiff for his hernia. There is also no evidence that she made any decisions regarding his medical care.  Plaintiff asserts Defendant Anderson was aware of his hernia due to personal "dealings" with Plaintiff, but there is no additional evidence in the record as to what these dealings were, when they occurred, what Plaintiff's symptoms were at the time, or what Defendant Anderson knew about Plaintiff's hernia. Plaintiff's statement that Defendant Anderson was aware of his hernia due to the "dealings" she had with him is insufficient to establish a claim for deliberate indifference to a serious medical need.  Farmer, 511 U.S. at 837; Boyd, 47 F.3d at 968.

As for Plaintiff's assertion that Defendant Anderson was the person who coordinated with doctors and hospitals for delivery of services, setting aside that the statement would be inadmissible because Plaintiff has not laid the foundation that his testimony is based on personal knowledge, Plaintiff has not established that Defendant Anderson was responsible for Plaintiff's medical treatment, or that she was involved in any decision-making regarding his care.  There is no evidence in the record before the Court that Defendant Anderson was personally involved in decisions whether to refer Plaintiff to surgery for his hernia.  Dahl v. Weber, 580 F.3d 730, 733–

20

34 (8th Cir. 2009) (explaining that § 1983 liability requires personal involvement, and a supervisor's role in prison operations alone is insufficient to establish liability).  But more importantly, the expert in this case opined that the medical treatment Plaintiff received for his hernia, including waiting for surgical intervention, was appropriate under current medical standards, and Plaintiff has offered no medical evidence or expert testimony to rebut this conclusion.  Plaintiff is unable to prove any of the elements required to demonstrate that Defendant Anderson was deliberately indifferent to his serious medical needs, and Defendant Anderson is entitled to summary judgment as a matter of law.  Dulany, 132 F.3d at 1239–40.

### V. Conclusion

In sum, Plaintiff has failed to establish that any of the remaining defendants were deliberately indifferent to his serious medical needs.  Plaintiff has not shown that at the time he was seen by the defendants, his hernia, which grew and changed over time, was a sufficiently serious medical condition.  Farmer, 511 U.S. at 834.  But to the extent that his hernia eventually did become a serious medical condition, in that it grew and became more tender and incarcerated, Plaintiff has not shown that the defendants knew about and disregarded his medical condition. Farmer, 511 U.S. at 837; Boyd, 47 F.3d at 968.  The expert in his case opined that Plaintiff received appropriate care for his hernia, and it is undisputed that Plaintiff eventually underwent successful surgery to repair the hernia.

It is clear from his filings that Plaintiff believes his hernia should have been treated with surgical intervention much sooner.  Plaintiff asserts that left untreated, a hernia can lead to serious complications such as intestines becoming trapped in the scrotum or abdominal wall, bowel obstruction, tissue necrosis, sepsis, excision of the intestine, and death.  However, there is no evidence in the record that Plaintiff suffered from any of these complications.  Plaintiff has not

offered medical evidence or expert testimony showing that the treatment he received was inappropriate, let alone reckless, or that there was a detrimental effect from any delay in his surgery.  Jackson, 815 F.3d at 1120 (requiring inmate to produce medical evidence that the alleged delay in treatment had a detrimental effect).  Disagreement with a course of treatment or even a showing of medical malpractice or negligence is not enough to establish a constitutional violation.  "Deliberate indifference is akin to criminal recklessness," and Plaintiff has failed to meet that standard here.  Popoalii, 512 F.3d at 499; Davis, 992 F.2d at 153.  Plaintiff's declaration regarding his symptoms and own theory about the treatment he should have received cannot create an issue of fact as to whether Defendants' conduct rose to the level of constitutional deliberate indifference.  Based on the record before it, the Court finds no reasonable jury could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs.  Hancock, 39 F.4th at 487.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Tomas Cabrera, Miguel Paniagua, Karen Rhodes, Mary Chandler, Bonnie Brennen, Tamara Anderson, and Tamra Crouch's Motion for Summary Judgment is **GRANTED.**  [ECF No. 67].

**IT IS FURTHER ORDERED** that Plaintiff's "Motion in Response and in Opposition to Defendants' Motion for Summary Judgement" is **DENIED.**  [ECF No. 70].

An appropriate judgment shall accompany this Memorandum and Order.


*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this ___16th___ day of December, 2022.